***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with some modifications the Opinion and Award of Deputy Commissioner Houser.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. On September 7, 2007 and October 28, 2007, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On all relevant dates, defendant-employer was self-insured.
3. Plaintiff sustained a compensable injury by accident on September 7, 2007 involving the right knee (I.C. No. 794486) and a compensable injury on October 28, 2007 to both knees (I.C. No. 837791).
4. On all relevant dates, an employment relationship existed between plaintiff-employee and defendant-employer.
5. On all relevant dates, plaintiff's average weekly wage was $203.37, yielding a compensation rate of $135.54.
6. At the hearing before the Deputy Commissioner, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record and marked as Stipulated Exhibit (2);
 b. An Accident Report with accompanying documents, which were admitted into the record and collectively marked as Stipulated Exhibit (3) and;
 c. A Packet of Industrial Commission Forms, which was admitted into the record and marked as Stipulated Exhibit (4).
 ***********
Based upon the competent, credible evidence of record herein, the Full Commission makes the following:
 FINDING OF FACTS *Page 3 
1. As of the hearing date before the Deputy Commissioner, plaintiff was sixty-one (61) years of age with her date of birth being December 28, 1947.
2. Plaintiff's employment with defendant-employer began in December 2005 as a school bus monitor and substitute teacher. Plaintiff later also worked as a clerical assistant in defendant-employer's print shop on an as-needed basis.
3. On September 7, 2007, plaintiff was leaving school in her car when a school bus in front of her began backing up in her direction. Plaintiff attempted to avoid the accident by backing her car up, but was still struck by the bus. At the point of impact, plaintiff's right knee hit the dashboard while she was pressing the brake pedal with her right foot.
4. On the date of the collision, plaintiff sought treatment at Wilson Immediate Care, where she was examined by Dr. Lawrence D. Krabill, to whom she reported experiencing pain in her right knee and hamstring. Dr. Krabill diagnosed plaintiff as having a minor strain of the right calf and hamstring with minimal discomfort of the right knee and provided her with a prescription for medication and restricted work duties.
5. Defendant accepted plaintiff's right knee strain as compensable through the filing of an Industrial Commission Form 60 and designated Wilson Immediate Care as the authorized treating facility. Plaintiff continued to treat at Wilson Immediate Care for her right knee strain throughout September 2007.
6. Prior to this compensable injury, plaintiff received treatment for her back and sacroiliac joint from Dr. Gerald C. Vanden Bosch who testified that he released plaintiff from his care in July 1998. There is no evidence of record that plaintiff experienced any significant back problems subsequent to being released by Dr. Vanden Bosch, or that she had any physical or work restrictions related to her back. *Page 4 
7. Plaintiff's symptoms related to these claims were limited to her right lower extremity, specifically with her thigh, knee, hamstring and calf until September 21, 2007, when discomfort with her hip was noted.
8. On October 4, 2007 plaintiff returned to Wilson Immediate Care where she was examined by Dr. Michael L. Bowen, to whom she reported experiencing increased back pain while riding the school bus due to her pre-existing fibromyalgia. This is the first notation of reported back pain by plaintiff related to these claims. Dr. Bowen noted that plaintiff's prior back symptoms were successfully treated in the late 1990's and that she had no residual symptoms or related disability. Dr. Bowen further noted that plaintiff related her current back pain to her fibromyalgia and referred her to her prior treating physician for that condition.
9. On October 18, 2007, plaintiff sought treatment from her primary care physician Dr. Natalie Doyle, who provided her with a note suggesting that "due to her fibromyalgia, (plaintiff) should not be on (the) school bus." This appointment was not authorized by defendant.
10. On October 28, 2007, plaintiff tripped and fell on both knees while working in the print shop. Defendant admitted the compensability of this incident, treating it as a medical only claim.
11. On October 29, 2007, plaintiff again returned to Wilson Immediate Care and was examined by Dr. Bowen who noted minor contusions on her knees and a significant functional overlay, which was described as the interaction of emotions or nonphysical concerns with physical complaints. Dr. Bowen released plaintiff to return to light duty work with restrictions and recommended an orthopedic evaluation. *Page 5 
12. On November 5, 2007, plaintiff was examined by Dr. Brian Szura with Cary Orthopaedics Neurology Center who noted that her right knee injury had resolved, but that she was experiencing significant pain in the sacroiliac region on the right that was myofascial in nature. For those symptoms, Dr. Szura recommended that plaintiff be evaluated by an appropriate physician, specifically identifying Dr. Smoot and Dr. Sanitate. However, this evaluation was not authorized by defendant.
13. Due to her myofascial pain and not her right knee, Dr. Szura opined that plaintiff could return to sedentary duty work.
14. Dr. Krabill concurred with Dr. Szura's assessment regarding plaintiff's right knee and continued plaintiff on light duty only until she was examined by Dr. Szura.
15. On the issue of causation, Dr. Krabill was unable to causally relate plaintiff's back pain and fibromyalgia to her September 7, 2007 or her October 28, 2007 compensable injuries.
16. On January 16, 2008, plaintiff sought treatment from Dr. Rudolph J. Maier, a neurologist, who had treated her approximately ten years prior for fibromyalgia. Dr. Maier noted that plaintiff's fibromyalgia was dormant until her September 7, 2007 motor vehicle accident. Dr. Maier further noted that a deformation of the ligaments around the sacroiliac joint could have occurred from plaintiff's forceful pressure on the brake pedal at time of impact. For treatment, Dr. Maier referred plaintiff to Dr. Colin Kurtz, a chiropractor. The chiropractic treatment was not authorized by defendant.
17. Plaintiff was treated at the Kurtz Chiropractic Center from February 14, 2008 through May 6, 2008 for neck and back pain. This treatment was not authorized by defendant. *Page 6 
In his records, Dr. Kurtz expressed his opinion that the symptoms for which he was treating plaintiff were the result of the September 7, 2007 motor vehicle accident.
18. On February 4, 2008 plaintiff sought additional treatment from Dr. Vanden Bosch of Wilson Orthopaedic Surgery Neurology, who previously treated plaintiff for low back problems in 1998. Dr. Vanden Bosch stated that plaintiff had not returned for additional treatment to her back prior to February 4, 2008. On this visit, plaintiff reported experiencing severe low back pain that radiated down her right leg into her calf. Plaintiff reported that after September 7, 2007, she had right knee pain and developed subsequent pain into her right thigh, buttocks and down the calf. Straight leg raises produced positive results because of the involved stretching of plaintiff's sciatic nerve. Dr. Vanden Bosch diagnosed plaintiff as having a neuroforaminal compression at L4-5 causing L5 nerve root irritation and sciatica.
19. On February 4, 2008, plaintiff returned to Dr. Vanden Bosch and his examination revealed remarkable tenderness in the right sacroiliac joint. Dr. Vanden Bosch opined that plaintiff's symptoms were probably the result of a significant strain of her sacroiliac joint. Dr. Vanden Bosch further opined that this strain was the result of the admittedly compensable motor vehicle accident of September 7, 2007 and medically excused plaintiff from work as of February 4, 2008. Dr. Vanden Bosch had not released plaintiff to return to work at the time of his deposition on March 12, 2009.
20. A March 20, 2008 MRI of plaintiff's lumbar spine ordered by Dr. Vanden Bosch revealed neural foraminal narrowing between L4-L5. Based upon these findings, Dr. Vanden Bosch opined that most of plaintiff's symptoms were due to the nerve root compression at L4-L5. Dr. Vanden Bosch prescribed epidural injections. *Page 7 
21. After the first epidural injection, plaintiff reported improvement in her symptoms. Following the second injection on May 28, 2008, plaintiff reported definite improvement in her back, right thigh and knee pain. Plaintiff was unable to afford additional treatments thereafter.
22. Dr. Vanden Bosch testified that plaintiff may experience recurrent back and lower extremity symptoms absent further medical treatment.
23. According to Dr. Vanden Bosch, it is not uncommon for someone to have an injury to their lumbar spine that initially results in no significant back pain but only radicular pain. He has had patients with localized knee pain but the true factor involved was nerve root irritation.
24. Although at one point during his deposition Dr. Vanden Bosch testified that plaintiff's sacroiliac joint strain "could" have occurred during the motor vehicle accident of
September 7, 2007, he later clarified his causation opinion by testifying that plaintiff's forceful pressure on the brake pedal when her vehicle was struck on that date was the likely cause of her sacroiliac joint injury.
25. The Full Commission gives greater weight to the expert opinions of Dr. Vanden Bosch than to the opinions of Dr. Krabill and finds as fact that as the direct and natural result of and causally related to her September 7, 2007 admittedly compensable injury by accident, plaintiff sustained a right knee strain and neural foraminal compression at L4-L5 causing L5 nerve root irritation and subsequent sciatica.
26. Based upon the credible medical and vocational evidence of record, and as a result of her September 7, 2007 admittedly compensable injury by accident and causally related neural foraminal compression at L4-L5 causing L5 nerve root irritation and subsequent sciatica, plaintiff has been incapable of earning any wages in her former position with defendant-employer *Page 8 
or in any other employment for the period of February 4, 2008, when Dr. Vanden Bosch medically excused her from work, through the present and continuing.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 7, 2007, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer involving her right leg. N.C. Gen. Stat. § 97-2(6).
2. As the direct and natural result of and causally related to her admittedly compensable September 7, 2007 injury by accident, plaintiff sustained a right knee strain and neural foraminal compression at L4-L5 causing L5 nerve root irritation and subsequent sciatica. N.C. Gen. Stat. § 97-2(6). See, e.g., Holley v. ACTS,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003).
3. On October 28, 2007, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer involving both knees. N.C. Gen. Stat. § 97-2(6).
4. Based upon the credible medical and vocational evidence of record, and as a result of her admittedly compensable September 7, 2007 injury by accident and causally related neural foraminal compression at L4-L5 causing L5 nerve root irritation and subsequent sciatica, plaintiff is totally disabled from any employment and is entitled to be paid by defendant ongoing total disability compensation at the rate of $135.54 per week for the period beginning February 4, 2008 through the present and continuing until such time as she returns to work or further *Page 9 
Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v.Lowe's Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. As the result of her admittedly compensable September 7, 2007 injury by accident and causally related neural foraminal compression at L4-L5 causing L5 nerve root irritation and subsequent sciatica, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based on the findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff ongoing total disability compensation at the rate of $135.54 per week for the period beginning February 4, 2008 through the present and continuing until such time as she returns to work or further Order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved below.
2. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of her admittedly compensable September 7, 2007 injury by accident and causally related neural foraminal compression at L4-L5 causing L5 nerve root irritation and subsequent sciatica, subject to the provisions of N.C. Gen. Stat. § 97-25.1.
3. A reasonable attorney's fee of 25% of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be *Page 10 
deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
4. Defendant shall pay the costs.
This 2nd day of December, 2009.
 S/__________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/__________ PAMELA T. YOUNG CHAIR
 S/__________ DANNY LEE McDONALD COMMISSIONER *Page 1